

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| vs. § | CRIMINAL ACTION NO.: 3:23-970-MGL-1 |
| § | |
| ALEX MANUEL DELGADO, § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT'S MOTION TO SUPPRESS**

### I.  INTRODUCTION

Pending before the Court is Defendant Alex Manuel Delgado's (Delgado) motion to suppress evidence seized during a vehicle search conducted as the result of a routine traffic stop. Having carefully considered the motion, the response, the oral arguments, the record, and the applicable law, it is the judgment of the Court Delgado's motion will be denied.

### II.  FACTUAL AND PROCEDURAL HISTORY

The Court determines the following facts by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974) ("[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence.").

On the morning of June 2, 2023, Officer Jason Tassone (Tassone) with the Sumter County Sheriff's Department was parked, facing north, in the grassy median of Interstate 95. Weather conditions were clear, and the four-lane interstate was dry, smooth, and well-marked.

At approximately 9:15 a.m., Tassone witnessed a pickup truck, which was driven by Delgado and traveling south, veer toward the white fog line on the outer edge of the right lane. Concerned Delgado might be intoxicated, Tassone began following Delgado. From the left lane, Tassone witnessed Delgado drive directly adjacent to the fog line numerous times and then drive completely on top of it at least twice, for a total of around eleven seconds. Tassone thereafter activated his blue lights and initiated a traffic stop.

As Tassone approached the passenger side of the truck, he detected an odor of marijuana. Then, from the front passenger window, Tassone saw in plain view what he believed to be a medical container of marijuana. He proceeded to identify himself and ask Delgado for his driver's license, registration, and proof of insurance. When Delgado informed Tassone the truck was a rental, Tassone asked Delgado for the rental agreement and his license. Delgado provided his license but stated he did not have a copy of the rental agreement. Tassone then requested Delgado step to the back of the truck. Before doing so, Delgado handed Tassone an Enterprise business card and a medical marijuana card.

At the back of the truck, Delgado confirmed he had no marijuana on his person, and Tassone instructed Delgado to have a seat in the front of his patrol car. At this point, Officer Ryan Kiernan (Kiernan), also from the Sumter County Sherriff's Department, arrived on scene.

Once inside the patrol car, Tassone asked Delgado where he was coming from. Delgado stated he was driving from New Jersey back to his home in Florida. Tassone responded, "I'm stopping you for failure to maintain your lane. You drifted over on the shoulder. I want to make sure you haven't been drinking or nothing." Simultaneously, Kiernan approached the truck and confirmed it was emanating a strong odor of marijuana.

Over the next few minutes, Tassone questioned Delgado about his trip to New Jersey. When Delgado confirmed everything in the truck belonged to him, Tassone inquired, "Other than the little bit of marijuana, is there anything else?" Delgado said no. Tassone then informed Delgado, "You can't possess marijuana in South Carolina, and you can't smoke it while you're going down the road." Delgado stated he did not smoke while driving, upon which Tassone replied, "It smells like it." Delgado explained, "I smoked in the truck at the hotel but no[t while] driving." Tassone then instructed Kiernan to begin searching the truck.

Tassone later joined Kiernan in his search, which ultimately revealed a medical marijuana container, rolling papers, a laptop, and several electronic devices commonly used as credit card skimmers.

After a grand jury indicted Delgado on four counts of credit card fraud, in violation of 18 U.S.C. § 1029(a)(1), (2), (3), and (4), Delgado filed this motion to suppress, and the government responded. The Court held a hearing, at which Tassone and Kiernan testified. Delgado declined to call any witnesses.

After hearing the government's testimonial evidence and both parties' oral arguments, the Court took the matter under advisement. Having been fully briefed on the relevant issues, the Court is now prepared to adjudicate the motion.

### III. STANDARD OF REVIEW

The Fourth Amendment to the United States Constitution provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of [the Fourth Amendment]." *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Therefore, an automobile stop is "subject to the constitutional imperative that it not be 'unreasonable' under the circumstances. As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.*

Even when a stop is initially supported by probable cause, the officer may detain the vehicle only for as long is "necessary to accomplish the purposes of the stop[.]" *United States v. Ortiz*, 669 F.3d 439, 444 (4th Cir. 2012) (citing *Illinois v. Cabelles*, 543 U.S. 405, 407–08 (2005)). "The maximum acceptable length of [the] stop cannot be stated with mathematical precision. Instead, the appropriate constitutional inquiry is whether the detention lasted longer than was necessary, given its purpose." *United States v. Branch*, 537 F.3d 328, 336 (4th Cir. 2008).

Where an officer prolongs a stop beyond the time necessary to accomplish its purpose, the seizure "must be justified by at least a reasonable suspicion of other criminal activity." *Ortiz*, 669 F.3d at 444. Reasonable suspicion exists where the "officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, evince more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Id.* (internal quotation marks omitted) (quoting *Branch*, 537 F.3d at 336).

Evidence obtained as the result of an unconstitutional seizure must be suppressed. *See Brendlin v. California*, 551 U.S. 249, 251 (2007) (remanding where the appellate court incorrectly determined the defendant had not been seized during a vehicle stop).

IV.   **DISCUSSION AND ANALYSIS**

Delgado first argues Tassone lacked reasonable suspicion or probable cause to conduct the stop because none of his actions constituted a violation of S.C. Code Ann. § 56-5-1900. Delgado divides this argument into three parts: (1) he did not strike or cross the dotted line separating the right and left lanes; (2) he did not strike the fog line; and (3) even if he did cross the fog line, "a brief, momentary crossing of that line also fails to provide reasonable suspicion to stop a motorist." Delgado's Motion at 10. Because the government has failed to argue Delgado struck or crossed the dotted line, the Court will address only the second and third parts of Delgado's argument on this issue.

In relevant part, S.C. Code Ann. § 56-5-1900(a) provides "[a] vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from the lane until the driver has first ascertained that such movement can be made with safety."

As to Delgado's claim he never struck the fog line, the evidence indicates otherwise. Dash camera footage clearly shows Delgado drove on the fog line at least twice, for a total of around eleven seconds, before Tassone activated his blue lights. Indeed, Tassone testified he saw Delgado straddle the fog line on two separate occasions before initiating the traffic stop. Moreover, body-worn camera footage shows Tassone informing Delgado, "I'm stopping you for failure to maintain your lane." He thereafter issued a warning Delgado's failure to maintain his lane.

Even still, Delgado maintains any momentary contact with the fog line was de minimis and thus failed to constitute a violation of S.C. Code Ann. § 56-5-1900(a) under in *State v. Alston*, 422 S.C. 270, 811 S.E.2d 747 (2018). The Court is unconvinced.

Delgado insists the South Carolina Supreme Court in *Alston* adopted a lenient interpretation of S.C. Code Ann. § 56-5-1900(a), which prohibits an officer from initiating a traffic

5

stop where the totality of the circumstances indicate a driver's failure to maintain his lane was merely de minimis. A more accurate summation of the *Alston* court's holding, however, is that S.C. Code Ann. § 56-5-1900(a) is violated only where the totality of the circumstances indicates a motorist failed to drive as nearly as practicable entirely within a single lane.

The traffic stop in *Alston* occurred after an officer witnessed the defendant drift several times within the middle lane of a six-lane interstate and then proceed to strike the dividing line separating the middle lane from the left and right lanes. The *Alston* court acknowledged S.C. Code Ann. § 56-5-1900(a) creates two separate offenses: (1) for failing to drive as nearly as practicable within a single lane and (2) for departing from the lane of travel where it is unsafe to do so. Turning to the text of the statute as it relates to the first offense, the *Alston* court explained, "Although the [l]egislature prefaced section 56-5-1900 with the word 'shall,' thus making it mandatory, the phrase 'as nearly as practicable' eliminates a finding that this is a strict liability offense." 422 S.C. at 282, 811 S.E.2d at 753. Accordingly, the *Alston* court determined "a motorist's breach of the dividing lines does not necessarily equate to a violation of the statute." *Id.* at 282–83, 811 S.E.2d at 753. Rather, the statute is violated only where the totality of the circumstances indicates the motorist failed to drive as nearly as practicable entirely within a single lane.

The government has not contended Delgado breached the dividing lines of the interstate. In this regard, *Alston* is factually distinguishable from this case. Nonetheless, the Court finds Tassone had probable cause to stop Delgado, as he observed Delgado drive close to the fog line numerous times and on the fog line twice. In other words, the totality of the circumstances indicate Delgado failed to drive as nearly as practicable within a single lane, in violation of S.C. Code Ann. § 56-5-1900(a).

More analogous to the facts here are those giving rise to the traffic stop in the post-*Alston* decision of *United States v. Dorsey*, 744 Fed. App'x 130 (4th Cir. 2018).

In *Dorsey*, an officer observed the defendant "swerving over both the center line (once) and the fog line (twice)." *Id.* at 132.  Based on his observations, the officer initiated a traffic stop, suspecting the defendant "might be under the influence or tired[.]" *Id.*  The defendant argued the officer lacked reasonable suspicion to conduct the stop "because weaving in traffic and failing to stay in the lane is not a traffic violation in South Carolina." *Id.*  Citing S.C. Code Ann. § 56-5-1900(a), the Fourth Circuit disagreed:

> [T]he officer's observation of [the defendant]'s repeated swerving out of his traffic lane provided probable cause to believe that [the defendant]'s failure to stay in his lane was neither practicable nor safe and, therefore, in violation of South Carolina traffic law.  Moreover, the officer's suspicion that [the defendant]'s weaving might have been the result of an impaired driver was reasonable, and driving under the influence is a crime.

*Id.*

Like the officer in *Dorsey*, Tassone observed Delgado repeatedly fail to stay in the right lane despite clear weather and road conditions.  Further, there were no indications it was either impracticable or unsafe for Delgado to stay in his lane.  For these reasons, under both *Alston* and *Dorsey*, Tassone had probable cause to believe Delgado violated S.C. Code Ann. § 56-5-1900(a).

Even if Tassone mistakenly believed Delgado's contact with the fog line was a violation of S.C. Code Ann. § 56-5-1900(a), suppression would be inappropriate, as the Court finds it was reasonable for Tassone to believe Delgado committed a traffic violation.  *See United States v. Arias*, 213 Fed. App'x 230, 232 (4th Cir. 2007) ("[I]f an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable."); *Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014) ("To be reasonable is not to be perfect, and so the Fourth Amendment allows for some mistakes on the part of government officials, giving them 'fair leeway

7

for enforcing the law in the community's protection.' We have recognized that searches and seizures based on mistakes of fact can be reasonable. . . . The limit is that 'the mistakes must be those of reasonable men.'" (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949))).

Next, Delgado argues Tassone unconstitutionally prolonged the stop by "immediately completely abandon[ing] a constitutionally reasonable prosecution of the traffic stop and embark[ing] on an illegal sustained course of investigation." Delgado's Motion at 12. This argument is plainly dispelled by the record.

As Tassone approached the truck, he detected a strong odor of marijuana, which was later corroborated by Kiernan. Delgado admitted to smoking marijuana in the truck the night before, thus supporting the veracity of Tassone's and Kiernan's observations. Additionally, once Tassone reached the passenger window, he saw in plain view what he believed to be a medical container of marijuana. Shortly thereafter, Delgado produced a medical marijuana card in response to Tassone's request for his rental agreement and driver's license. For these reasons, the Court finds the totality of the circumstances indicates Tassone had "reasonable, articulable suspicion of ongoing criminal activity" so as to constitutionally prolong the stop. *United States v. Bowman*, 884 F.3d 200, 213 (4th Cir. 2018); *see United States v. White*, 836 F.3d 437, 442 (4th Cir. 2016) (explaining an odor marijuana alone constitutes reasonable suspicion to prolong a traffic stop), *abrogated on other grounds by United States v. Stitt*, 586 U.S. 27 (2018).

Finally, Delgado argues Tassone and Kiernan lacked probable cause to search the truck. The Court will reject this argument for the reasons set forth above. *See United States v. Palmer*, 820 F.3d 640, 650 (4th Cir. 2016) (explaining an odor of marijuana emanating from a vehicle is sufficient to establish probable cause for an officer to believe the vehicle contains evidence of criminal activity).

## V.     CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Delgado's motion to suppress, ECF No. 39, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 11th day of December 2024, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE

9